Krista Peterson v. Experian Information Solutions Mr.. Shammy when you are ready I will give you three minutes for rebuttal your honors. May it please the court my name is David Shammy and I represent the appellant Krista Peterson in this matter. This appeal stems from the district court's decision to grant summary judgment and we've limited our appeal to the issue of damages. The district court found and according to the order relied heavily on, appears to have relied heavily on, excluding competent testimony and evidence regarding damages relying solely on a response to a request for admission which we believe the court either too narrowly construed the question and answer and it appears also disregarded other responses to both RFAs interrogatories and depositions which if you read the requests for admissions the way plaintiff or the appellant reads them that information and that testimony is consistent with the plaintiff's testimony and even with the RFA that the district court cited to. Well let me just start by asking you this me and Chris we got two of these coming up what you're gonna have another one in a few minutes but as far as Miss Peterson's case is concerned are you limiting your damages analysis to the emotional distress arm? Are you in other words are you alleging that she actually suffered some financial loss as a result of the credit report? We do allege that that the information the inaccurate information was sent to and there's evidence in the was sent to Chase as part of a credit application and I think ultimately Miss Peterson is not qualified to testify as to why Chase denied her credit but I think the standard here is whether or not and we all agree that Miss Peterson had filed a bankruptcy and and that would be likely a factor in a credit determination but it doesn't have the fact that the inaccurate information was doesn't have to be the sole factor just has to be a substantial factor in determining whether or not to approve someone for credit. Well I guess that and that leads to the question I have then is what do you have to what do you have to show and how can you show that it was a substantial factor when even she testified she thought it was the bankruptcy which is what? Well we have an once somebody files for bankruptcy they get they are graded on a different scorecard there's a bankruptcy scorecard and our expert says when you report a bankruptcy what creditors expect to see is no more debt. When we make it when a creditor makes a determination about whether to extend future credit they're looking at a consumer's credit report understanding that and expecting to see that's discharged in bankruptcy but when you have a bankruptcy and you have debt that remains and what's interesting here is that debt doesn't only remain but it shows an existing past due balance it also shows a monthly payment obligation which means this consumer has not only discharged her debt in bankruptcy but also has this negative debt that continues beyond the bankruptcy whether or not whether or not the denial of credit that the the reporting was a as long as we can produce competent evidence and I believe we have provided competent evidence of a credit denial of a harmful of a harmful credit reporting issue that would have been considered and would have been a substantial factor Mr. Hendricks testified and he doesn't say whether or not the denial in fact was the sole cause but he says there's a double whammy you have a bankruptcy and that's common sense you have a bankruptcy and now you have this ongoing negative reporting but nobody's ever really produced any evidence of what was the decision-making process right and so at the end of the day when we usually look for substantial evidence when we're looking at something that's a substantial factor we look for substantial evidence and we look for substantial evidence we look for something from which one could draw a reasonable inference that it was in fact considered and what we have here is surmise by an expert who admittedly is familiar with the process familiar with how credit companies operate and what they ordinarily do but you didn't produce like any of Chase's you know internal documentation in their records any of the processes of how they score and I get where that's hard to come by but but you could have in theory you know subpoenaed the person who made that that determination and so what happened and instead what we've got standing in the record as the only actual evidence right is the statement of your client that well it's the bankruptcy or something you know we we have what we did subpoena chase and of course chase doesn't have the denial letter anymore and if anyone has ever applied for credit we all have when they deny you they don't say here's why you were denied they say here are some of the reasons why you were denied and that that document of course we tried to get it from chase and they don't have it and so I'm not hanging my hat on there must trying to get a creditor to tell you why they denied credit specifically it's I got it I mean I used to practice law I mean it's been like a hundred years ago but I used to do that but more importantly and I will acknowledge that we are we are more importantly relying on the testimony by miss by miss Peterson about the emotional harm and and and so I want to turn our attention to the circuits essentially the 8th Circuit standard for whether or not you can bring a case to a jury on emotional distress and the 8th Circuit and Taylor said look you can establish damages solely by plaintiffs own testimony so long as that testimony identifies and describes the kind of severe emotional distress that warrants damages and and more importantly the 8th Circuit said in that same year in Brent and Bennett the riceland foods but competent evidence of genuine emotional distress should be submitted to the jury even if it is scant we don't have scant testimony or scant evidence of emotional distress in this case we have a consumer or a plaintiff who said listen I had legitimate emotional distress I had anxiety I had pre-existing issues I was being treated for those issues prior to the bankruptcy prior to the credit reporting issue I was already seeing a therapist this caused me severe emotional distress such such that when I went to my regular appointments it was a point of contention it was something that I brought up to my therapist it was something that was so stressful to me that my therapist increased my anti medication increased my my sleeplessness medication to help her go to sleep I mean this is something that that she testified to it's not simply the type of damages that we saw in Taylor which the 8th Circuit said well look you've had the inaccuracy you you resolved it in five to ten minutes from the time you found out about the inaccuracy to the time you resolved it you had a five to ten minute moment of legitimate distress but it was very short-lived and we're not going to allow that to proceed we don't have that here we don't but we do have this rule 36 admission and then we have the testimony that contradicts it and of course you know appellate courts are like big on rules and we've always had one of them rules it says that when you find yourself in a position we've made a rule fix 36 admission that technically you're supposed to you know make some kind of a filing to set aside the admission you know what we've got is the testimony that comes in later that like under Taylor we say that that that kind of testimony is enough you can present that testimony drag in a person who say observed it and that's that's enough certainly to create a jury question what should we make of the fact that there was never a filing to withdraw the rule 36 admission your honor I read the rule 36 admission and I don't believe that it's inconsistent with her testimony if you read the the question it says admit that plaintiff has not met with or been examined by any mental health professional as a result of the events that form the basis of this litigation miss Peterson testified she had already been seeing the therapist she did not seek out therapy as a result of this reporting that's not inconsistent she if she she couldn't withdraw that admission because it is true you know she didn't seek out the therapy but she was already seeing a therapist and as part of the normal sessions this issue was a real thing for her that she raised it caused the medication but not any increased cost and she's not seeking reimbursement for her medical treatments because she was going there anyway she's not seeking reimbursement for the medications because she was already being medicated so I don't see the and if we look at the interrogatory responses which were served under oath at the same time as the RFA's interrogatory number 13 which is a docket 107-3 plaintiff answers the question of you know describe all humiliation mental or emotional distress by saying plaintiff suffered immense stress and anxiety as a result of defendants conduct defendants conduct exacerbated pre-existing anxiety and depression that was served with at the same time as the responses to the RFA's that is absolutely consistent with the to admit and respond to that RFI RFA and I heard that position testimony is consistent I didn't mean to lead you down this long rabbit hole you mean you answered my question thank you okay and so to the extent that experience in their opposition raises a whole slew of other issues that we don't believe are appropriate for consideration at this court because we haven't appealed the district courts decision on willfulness although we address it in our opposition or in our reply brief to the extent the court wants to ask questions about that I can either deal with it now or I can deal with it I'm during my my reply so I'm going to reserve the remaining four minutes up you may thank you mr. Wears on behalf of the Pelley Experian so mrs. Peterson's case presents in my view the thing exactly right pursuant to policies that were designed to maximize accuracy and to comply with a federal court injunction the offending trade line from South Point Federal Credit Union was on ms. Peterson's file for a matter of mere months appearing alongside a parade of other major derogatory accounts that account which was current at the time she filed bankruptcy was updated automatically by Experian without any notice from anyone not from ms. Peterson herself not from South Point that is precisely how the system is designed to work plaintiff claims that she was upset about this one minor derogatory reporting alongside a sea of major derogatories but she was apparently not upset enough to let Experian know keeping her disappointment to herself and then filing a lawsuit after the passage of nearly half a year and five months after it had been automatically updated because the system worked exactly as designed ms. Peterson unsurprisingly cannot muster any evidence of damage Experian systems are designed to be consumer friendly and that's exactly how things played out in this case the judgment of the district court was correct and it should be affirmed for three separate reasons first the undisputed record record evidence in this case is that the procedures that Experian employed were designed to track and abide by a federal court injunction I thought you there seems to be a lot of confusion about this issue the appellant filed a 28 J letter citing all these Ninth Circuit cases mainly Snyder cases about the white injunction and saying it doesn't apply in these cases and I thought you said filed a response saying you're not the Ninth Circuit opinions which were one page unpublished non-presidential orders on a motion to dismiss said that the panel there couldn't determine from the pleading that Experian had complied with white here we have a complete record Experian Experian's procedures were designed to comply with white and indeed they did and it cannot be said to be negligent behavior to put in place procedures that are designed to comply with a court order so just just to be clear although the appellant says they're only they're only appealing the damage determination which is the primary reason the district court dismissed the case you want us to affirm on alternative grounds that as a matter of law you follow the white injunction and following the white injunction eliminates any claim for negligence so we want you to affirm for whatever reason you decide to affirm but there are three reasons that are clearly you should affirm the first is even if you think the white procedures aren't reasonable it nevertheless can't be negligent for Experian to follow a court order that's reason one and the evidence is undisputed in this case that Experian's procedures that it used were designed to follow a court order all right and now I want to talk it just just tease this out just a tiny tiny bit it seems to me that what I'm hearing you argue is not a preclusion argument there's no no claim that's been precluded no issue that's been precluded as a result of this what I'm hearing is as a matter of law it is not negligence to design a system consistent with the court order and then apply it nationally correct when that when that court order requires you to do precisely that and that you're really arguing just that is a that no reasonable juror could find the establishment of such a process unreasonable right it's not negligent it's not negligent to do what a court told you to do and there's and the undisputed and unrebutted evidence in this case and I encourage you to look at the declaration from Ms. Cave and her expert report these systems that Experian employed here were specifically designed to comply with that court order now we also think the court order itself is reasonable we think the procedures are reasonable that's a third reason you could affirm has any court said what you are asking us to say which is that as a matter of law a system that's designed in compliance with the white injunction eliminates any claim for negligence no these are the very first the Peterson case was one of the very first file there's now a whole laundry list of them but the district courts and I understand they're not presidential without exception have found that your position is not tenable well the district courts have found or either didn't reach him or found the one time the district court decisions there's only been one on summary judgment which is in the Northern District of Georgia which was applying a sort of different standard the others were all on motions to dismiss and then even in this there were a few on summary judgment Peterson which we're here for and beers which we just submitted a supplemental authority also in the District of Minnesota rule for us on damages but then affirmed on willfulness for us saying well clearly it can't be willful when you're trying when you're working to comply with a federal court order that's true but it also can't be negligent so here we have judge Doty who did look at it said yeah they were complying with white their procedures were designed to comply with white that can't be willful he then said I don't need to reach the next question which is is it negligent because he found no damages well I guess I'm curious I'm looking at the white injunction here I think it's July of 2008 no one has raised this so all the see what you're saying is the credit reporting agencies have designed their systems in compliance with white assume that's true and in up until a year or so ago for those 12 to 13 year interval no one's challenged this system it's an incredibly effective system so ms. Peterson's counsel has found a little niche there are exceptions to what white says it's not gonna be perfect white admits this will not be perfect perfections not possible so it creates reasonable assumptions one the furnisher does not tell us that it's included in bankruptcy when those two things are true then you should not turn a good account into a bad account let's give the consumer time because they might be they might have some side deal with the furnisher where they're gonna try to keep this account that's precisely what happened with ms. Peterson and that experience doesn't just walk away experience continues monitoring and here it has a process called the look-back scrub again I'd encourage you to look at miss caves declaration in her expert report the look-back scrub was also designed to comply with white accounts that are less than 120 days delinquent are considered minor derogatories a lot of scoring models don't treat them as derogatory at all similarly the white injunction itself calls those accounts only minor derogatories so what experience did is if an account was current and not scrub great it doesn't get scrubbed and by scrubbed I mean updated to discharges in bankruptcy we then watch it we watch that account once it goes into a major derogatory status 30 60 90 120 it gets updated automatically so what miss Peterson had here was she was in that interval 30 60 90 it's a minor derogatory it's not even most scoring models wouldn't even treat it derogatory at all not to mention her credit report had 15 discharge and bankruptcy accounts on it so the scrub itself is reasonable and complying with it is reasonable and then the look-back scrub there is no evidence in the record here that the look-back scrub that experience applied was anything other than in a good-faith attempt to follow white and the purposes of white and it worked beautifully it frankly worked beautifully I mean this plaintiff didn't have to do anything it updated automatically in the meantime she had 30 60 90 that's not a terribly derogatory thing especially in the fact most scoring models it's not derogatory at all but it's certainly less derogatory than discharge and bankruptcy so point one it can't be negligent we're following a court order the unrebutted evidence is that's precisely what we the chase account there's clearly no evidence substantiating that denial in fact she applied for three credit cards at the same time with the knife for all three the other two were based on other Bureau reports then after experience automatically updated she applied to chase again still denied so clearly that denial not only does she not have evidence that it was caused by a 60-day late South Point account it is clearly not because after it was updated she was still denied emotional distress Taylor sets forth the standard it adopts the position of the Seventh Circuit in Ruffin's Tompkins Sarver and wants Sarver says because emotional distress is so easy to manufacture we're gonna use a you have to provide some actual evidence well here we served our face council ready one of them request 21 admit plaintiff has not met with or been examined by any medical professional to treat or diagnose any condition caused by the events that form the basis of this litigation admit she never moved to rescind alter modify she gave a deposition in their testimony was largely consistent she talked about the bankruptcy itself was stressful she says she mentioned experience but didn't say anything about any increased medications and then suddenly at summary judgment we get an affidavit that says medications well it's contradicting her earlier RFA and which is clearly not allowed in the circuit or any circuits as far as I'm aware what about the interrogatory answer your opposing counsel quoted from the interrogatory answer doesn't doesn't get there it's just conclusory platitudes there's there's nothing of any substance there other than you know I was upset when I saw this that's just not enough that the a-circuit in adopting the seven circuits position it's a strict standard you have to have real genuine injury you can't just be upset life is upsetting sometimes it has to be real genuine injury and I think if you read Taylor carefully and read the cases that Taylor relies on I think you can get a sense of what is required first of they rely on the seventh circuit for the standard but then they cite a couple cases where the evidence was enough Cortez in the Third Circuit there the woman was labeled a terrorist she sent in four disputes and could not get the problem fixed she had sleep diagnosed sleeplessness requiring medication weight loss and other third-party testimony yes that's enough Stevenson in the Fifth Circuit sends in two disputes the process drags out for years or for months rather six months he has to go explain things because he's trying to get a loan to some bank officers yes that's distressful in fact I would encourage your honors to look at the cases plaintiffs sites any case virtually where a court has said the emotional distress evidence on its own is enough includes the plaintiff making a dispute Cortez there were four Stevenson to Lewis and there was a dispute Barton rebel Graham Loesch Meyer at a essentially every single one if it's distressing you do something about so that's pretty clear I judge Doty was right on the nose with the damages point finally we believe the record evidence in this case establishes the procedures were reasonable it is reasonable as white after years of litigation determined it was reasonable to allow consumers to try to keep a current debt through bankruptcy that's a reasonable procedure that's what we did it's certainly not willful even a point of claims that he's not challenging willfulness it's certainly an important issue as well I see my time is running up your honors thank you very much thank you you all right thank you for my rebuttal time I want to address just the futile and things that the council said about damages I want to make a point that miss six months or so after she learned of the the inaccurate credit report mr. weirs talked about she was denied credit by chase subsequent well let's be honest chase has different credit cards there's nothing in the record that experience can rely on to help help the court understand this panel understand whether this is a different type of credit card different requirements different requests this is why we don't raise it and the expert that they rely on is there basically their everyday corporate representative Kimberly cave she's been working for experience for 20 plus years all of the training and everything she knows about credit reporting came from experience itself so I I'd say that that's a credibility determination as to whether miss cave is an actual expert and and what experience really seems to be asking this court to do is to offer them strict immunity we agree that the FCRA is not a strict liability statute but there's also no such thing as strict immunity you don't get strict immunity you don't get to follow a court order that by the way this is a settlement agreement that was drafted in large part by experience lawyers they drafted it and ultimately judge Carter the Central District of California signed it so it's an order in effect but the language was drafted in large part by experience and judge Carter added something to that order it was section 5.6 he said absent a fundamental change in circumstances so he intended even though he acknowledged that it was highly unusual to try to apply this settlement to future people who were not members of the class he put in section 5.6 and he says look I normally can't do this he acknowledged it wouldn't have binding effect I didn't think it could have binding effect on but even if he tried to he understood that look this is in 2008 said absent a fundamental change in circumstances experience has ignored the possibility of a change in circumstances they have ignored the fact that the other two credit reporting agencies have stricter policies and procedures and implemented white in a different way they've ignored it we identify that for the court in this brief and in fact they changed those policies and procedures in 2021 because of our lawsuits so we've made their procedures better there should be less lawsuits moving forward because of Miss Peterson and people like Miss Peterson holding the credit reporting agencies responsible for their conduct there is another case out of a northern district Illinois called Laura Tiffany experience where experience was denied summary judgment so they're not all besides the Benjamin case out of Georgia the Laura case out of the northern district Illinois denied summary judgment on their reasonable procedures claim as well in addition to numerous courts on motions to dismiss the another thing that's important here is that there are pending cases against experience northern district of Illinois a case called stagger be experience judge Cole in a discovery matter issued an order where he found that experience discovery practices amounted to bad faith because they were withholding slew of documents emails policies and procedures scrub documents from plaintiff despite our requesting of those documents which is why judge Doty didn't have the benefit of what did experience know when they created this policy what were they withholding so for the willfulness claim we don't have in the record but moving forward I'd ask the court to consider only the damages it's the only thing that's at issue thank you thank you very much for your briefing and arguments been very helpful to the court the court will take the case under advisement